IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| JESSICA BATES, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. _____ |
| | ) |
| METHODIST LE BONHEUR HEALTHCARE | )   JURY DEMAND |
| d/b/a METHODIST NORTH HOSPITAL, | ) |
| | ) |
|     Defendant. | ) |

_____

COMPLAINT AND JURY DEMAND
_____

Plaintiff, Jessica Bates, by and through her counsel, Bachus & Schanker, L.L.C., brings this action against the Defendant, Methodist Le Bonheur Healthcare d/b/a Methodist North Hospital, and alleges:

I.  INTRODUCTION

1. This is an action by the Plaintiff, Jessica Bates, against Defendant, Methodist Le Bonheur Healthcare d/b/a Methodist North Hospital, for medical malpractice, negligence, failure to protect their staff, inadequate security, failure to establish minimum health and safety and standards that must be met by providers and suppliers participating in the Medicare and Medicaid program, and outrageous conduct, that directly caused Jessica Bates to be attacked by a patient on Medicare and/or Medicaid in an emergency department hospital room, which has caused permanent harms, losses, impairment, and damages. Upon information and belief, this Defendant shockingly and

outrageously had not established any health and safety and standards in accordance with longstanding Federal Regulations under Title 42.

## II.  JURISDICTION

2. This Court has jurisdiction pursuant to 28 U.S.C. §1332 based on complete diversity of citizenship with the amount in controversy exceeding Seventy-Five Thousand Dollars ($75,000.00). Complete diversity exists between the parties, as the Plaintiff resides at 23 County Road 412, Oxford, Mississippi 38655, and the Defendant is a business entity established under the laws of the State of Tennessee with principal corporate offices located in the State of Tennessee. This Court has jurisdiction pursuant to 28 U.S.C. §1331 to the extent that it concerns federal regulations for hospitals that had been established under Title 42. Finally, this Court has supplemental jurisdiction, pursuant to 28 U.S.C. §1367.

## III.  COMPLIANCE WITH STATUTORY NOTICE REQUIREMENT

3. The Plaintiff, through counsel, has complied with the provisions of T.C.A. §29-26-121(a)(1), which requires that any person asserting a potential claim for health care liability shall give written notice of such potential claim to each health care provider against whom such potential claim is being made at least sixty (60) days before the filing of a Complaint based upon health care liability. On April 4, 2023, notice was given to Defendant by sending it to them, via certified mail, with a certificate of mailing, in accordance with T.C.A. §29-26-121(a)(4). See, Notice of Claim, attached as **Exhibit 1**; see also, Certificate of Mailing Pursuant to T.C.A. 29-26-121(a)(4), attached as **Exhibit 2**; see also, Affidavit of J. Howard Thigpen, Esq. – Party Mailing the Notice, attached as **Exhibit 3**, with all three exhibits being incorporated herein by reference. In addition, Defendant, Methodist Le

Bonheur Healthcare a/k/a Methodist Healthcare – Memphis Hospital d/b/a Methodist North Healthcare was personally served with process. See, Signed and Notarized Proof of Service, attached as Exhibit 2. No executive, President, Vice President, administrator, representative, counsel, employee, faculty, and/or agent of Defendant has contacted or communicated with Plaintiff's counsel since the service of this Notice of Claim despite more than thirty (30) days elapsing since service of the Notice of Claim and its accompanying exhibits. See, T.C.A. §29-26-121(a)(5). The statutory Notice of Claim was filed at least sixty (60) days prior to the filing of this Complaint. See Ex, 1; see also, T.C.A. §29-26-121(a)(1). The statute of limitations was tolled for one hundred twenty (120) days, in accordance with statutory law. See, T.C.A. §29-26-121(c). This action has been filed less than the one year and one hundred and twenty (120) day tolling time period for filing such actions. See, T.C.A. §29-26-121; T.C.A. §29-20-305; see also, *Cunningham v. Williamson County Hosp. Dist.,* 2011 Tenn. App. LEXIS 645 (Tenn. Ct. App. Nov. 30, 2011).

### IV.   CERTIFICATE OF GOOD FAITH

4. Pursuant to T.C.A. §29-26-122(a)(2) (2021), the plaintiff or plaintiff's counsel has consulted with one (1) or more experts, who have provided a signed written statement, confirming that upon information and belief, they: (A) are competent under T.C.A. §29-26-115 (2021) to express an opinion or opinions in the case; and (B) believe, based on the information available from the medical records reviewed, concerning the care and treatment of the plaintiff for the incident or incidents at issue, and, as appropriate, information from the plaintiff or others with knowledge of the incident or incidents at issue, that there are facts material to the resolution of the case that cannot be reasonably ascertained from the medical records or information reasonably available to

the plaintiff or plaintiff's counsel; and that, despite the absence of this information, there is a good faith basis for maintaining the action as to each defendant consistent with the requirements of T.C.A. §29-26-115.  Refusal of the defendant to release the medical records in a timely fashion or where it is impossible for the plaintiff to obtain the medical records shall waive the requirement that the expert review the medical record prior to expert certification.  See, Executed Certificate of Good Faith, Medical Malpractice Case, Plaintiff's Form, attached as **Exhibit 4**.

5.	Pursuant to T.C.A. §29-26-115(d)(4) (2021), neither the plaintiff nor plaintiff's counsel have ever violated the provisions of T.C.A. §29-26-122 (2021).  See, Ex. 4.

## IV.  PARTIES

6.	Plaintiff, Jessica Bates, is and was at the time of this incident a female, adult resident of the State of Mississippi.  Plaintiff currently resides and did reside at the time of this incident at 23 County Road 412, Oxford, Lafayette County, Mississippi 38655.

7.	Defendant, Methodist Le Bonheur Healthcare d/b/a Methodist North Hospital (hereafter referred to "Methodist"), is a nonprofit corporation organized under the laws of the State of Tennessee with its principal office and mailing address located at 3960 New Covington Pike, Memphis, Tennessee 38128. See, Tennessee Department of Health Registry of Licensed Facilities, attached as **Exhibit 5**.  Donna Bolden, as paralegal for Methodist Healthcare in Shelby County, Tennessee, accepted service of process of the Notice of Claim and its accompanying exhibits upon Defendants on April 19, 2023, as sworn to by process server, Kenyardia Sims.  See, Ex. 2.  The Administrator for the facility is the Chief Executive Officer, Michael Ugwueke, who is located at Methodist Healthcare – Memphis Hospitals, 1265 Union Avenue, Memphis, Tennessee 38104.  See,

Ex. 5. The Facility License Number is 00000109. See, Exhibit 5. Donna Bolden, as paralegal for Methodist Healthcare in Shelby County, Tennessee, accepted service of process of the Notice of Claim and its accompanying exhibits upon Defendants on April 19, 2023, as sworn to by process server, Kenyardia Sims. See, Ex. 2. The Registered Agent for Service of Process in Tennessee is Jessica Reeves, Esq., who is located at 1211 Union Avenue, Suite 700, Memphis, Tennessee 38104-6600. See, Secretary of State Business Search, attached as **Exhibit 6**. Donna Bolden, as paralegal for Methodist Healthcare in Shelby County, Tennessee, accepted service of process of the Notice of Claim and its accompanying exhibits upon Defendants on April 19, 2023, as sworn to by process server, Kenyardia Sims. See, Ex. 2.

## V. FACTUAL ALLEGATIONS

8. The facts and allegations set forth in all other sections of this Complaint and Jury Demand are incorporated herein by reference, as if set forth in specificity.

9. Prior to April 19, 2022, Plaintiff, Jessica Bates, entered into a Master Candidate Agreement to work for Voyage Healthcare, LLC, as an emergency department registered nurse.

10. Prior to April 19, 2022, Plaintiff, Jessica Bates, had been placed by Voyage Healthcare, LLC, as an independent contractor to work as an emergency department registered nurse for Defendant, Methodist Le Bonheur Healthcare d/b/a Methodist North Hospital.

11. Upon information and belief, prior to April 19, 2022, it was well known to hospitals across the country, that there had been a twenty-three percent (23%) increase in workplace violence for hospital nurses from 2019 through 2020 (i.e., the two-year period prior to this subject incident).

12. Upon information and belief, prior to April 19, 2022, it was well known to hospitals

across the country, that there had been a one hundred nineteen percent (119%) increase in workplace violence for hospital nurses from March of 2021 through March of 2022 (i.e., the one-year period prior to this subject incident).

13. Upon information and belief, on or about April 19, 2022, Defendant, Methodist Le Bonheur Healthcare d/b/a Methodist North Hospital, received a patient to Emergency Department Room 20 via EMS.



14. Upon information and belief, Plaintiff, Jessica Bates, was not a part of Defendant, Methodist's, staff, who received and placed a patient into Room 20 in the Emergency Department.

15. Here is a picture of the inside of Emergency Department Room 20, where the patient was placed:



16. Upon information and belief, the patient was a Medicare and/or Medicaid patient.

17. Upon information and belief, at the time that Defendant, Methodist, received this patient, they witnessed and knew that the patient was verbally combative, witnessing, amongst other things, her say that she refused to move from EMS stretcher to the hospital bed.

18. Upon information and belief, EMS told Defendant, Methodist, that the patient had been at a doctor's office for a total knee replacement evaluation.  It was reported by the doctor's office to EMS that when the doctor told the patient that she was not a good candidate for the surgery, the patient stated that she was going to go home and blow her brains out and she had the gun to do it.  The caregiver, who was with the patient at the time, stated that the patient did have a weapon in the home to do it.

19. Upon information and belief, after the patient was received and placed in Emergency Department Room 20 but before 13:35 on April 19, 2022, the patient's personal caregiver left the room and asked Plaintiff, Jessica Bates, if she could come get the call light for the patient.

20. Upon information and belief, Plaintiff, Jessica Bates, entered Emergency Department Room 20 in order to get the call light for the patient.

21. Upon information and belief, at no time prior to Plaintiff, Jessica Bates, entering Emergency Department Room 20 did anyone with Defendant, Methodist, warn, notify, or alert Plaintiff, Jessica Bates, about the violent and high-risk nature or the recent history of threats from the patient in Room 20.

22. Upon information and belief, Plaintiff, Jessica Bates, entered Emergency Department Room 20 and walked around the bed in order to get the call light for the patient. At no time did the patient say anything to Plaintiff, Jessica Bates.

23. Upon information and belief, as the Plaintiff, Jessica Bates, reached to hand the patient the call light, the patient without warning struck Plaintiff in the side of the head with the chord of the monitor, which knocked Plaintiff out and she fell to the ground.

24. Upon information and belief, when the Plaintiff came to from the strike in the head from the patient, the patient had her hands around Plaintiff's throat, while beating her on the head.

25. Upon information and belief, at around 13:32 on April 19, 2022, another nurse entered Emergency Department Room 20 due to screaming heard from the hallway. Upon entering the room this nurse saw Plaintiff, Jessica Bates, being physically hit by the patient, including, but not limited to slapping and punching the side of her head. This nurse heard the patient screaming that

she was going to "blow everyone here's head off."

26. Upon information and belief, restraints were placed on the patient per a physician's verbal order due to the patient being unsafe to herself and others.

27. Upon information and belief, the patient continued to scream that she will "kill everyone here" and "I'll get my whole family to come up here and f*** all y'all up."

28. Upon information and belief, a behavioral health consult came by Emergency Department Rom 20 to evaluate the patient.

29. Defendant, Methodist, had no code or plan in place letting staff know if there's an at-risk patient or if the patient could potentially harm the staff.

30. Defendant, Methodist, had no policy or procedure in place, regarding at-risk patients or the staff potentially being in harms' way and how to handle it.

31. Defendant, Methodist, had no emergency call button if there was a patient, who was putting the staff at risk.

32. Defendant, Methodist, didn't follow head trauma protocol of any kind after finding Plaintiff, Jessica Bates, being struck multiple times in the head by the patient in Emergency Department Room 20.

33. Defendant, Methodist, failed to monitor Plaintiff, Jessica Bates, for twenty-four (24) hours following her head trauma.

34. Defendant, Methodist, was a provider participating in the Medicare and Medicaid programs.

35. Defendant, Methodist, was under a duty to follow The Social Security Act which

mandated the establishment of minimum health and safety and standards found in Title 42 of the Federal Regulations.

36. Defendant, Methodist, acted with less than or failed to act with ordinary and reasonable care in accordance with the applicable standards of care.

37. As a direct and/or proximate result of the Defendant, Methodist, failing to have a plan, protocol, and policies and procedures in place, in order to assess risk of patient's harming either themselves or the staff, Defendant's actions and/or omissions were a cause in fact as well as a legal cause of Plaintiff, Jessica Bates, suffering harms, losses, impairment, and damages that are permanent and will continue to affect her into the future. These damages far exceed Seventy-Five Thousand Dollars ($75,000.00) in compensation for economic, non-economic, and impairment damages.

38. As a direct and/or proximate result of the Defendant, Methodist, failing to protect their staff from known at-risk or high-risk patients, who had previously threatened to harm herself or others, Defendant's actions and/or omissions were a cause in fact as well as a legal cause of Plaintiff, Jessica Bates, suffering harms, losses, impairment, and damages that are permanent and will continue to affect her into the future. These damages far exceed Seventy-Five Thousand Dollars ($75,000.00) in compensation for economic, non-economic, and impairment damages.

39. Plaintiff, Jessica Bates, harms, losses, impairment, and damages would not have occurred but for the Defendant's actions and/or omissions outlined herein.

40. Throughout these events, Defendant's executives, officers, management, and/or agents acted with a callous and intentional disregard and indifference of what their staff, including,

but not limited to Plaintiff, Jessica Bates, had been subjected to and made no effort to remediate their knowing, willful, careless, and callous failure to follow federal regulations.

41. Plaintiff is entitled to pre-judgment interest at the rate provided by statute and seeks pre-judgment interest from the earliest possible date.

## VI. DISCOVERY OF NEGLIGENCE

42. At no time prior to Plaintiff, Jessica Bates, entering Emergency Department Room 20 on or about April 19, 2022, did anyone with Defendant, Methodist, warn, notify, or alert Plaintiff, Jessica Bates, about the violent and high-risk nature or the recent history of threats from the patient. Plaintiff, Jessica Bates, had no reason to discover the professional negligence and/or general negligence of Defendant, Methodist, prior to April 19, 2022, and she did not discover any professional negligence and/or general negligence by Defendant, Methodist, or that their professional negligence and/or general negligence was causing injury prior to April 19, 2022. Moreover, Plaintiff, Jessica Bates, had no reason to discover Defendant, Methodist's, failure to comply with state and/or federal regulations with regard to having a plan in place or a system created to warn, notify, and/or alert their staff, employees, administrators, faculty, or agents of violent and/or high-risk patients.

## VII. FIRST CAUSE OF ACTION
*Violation of 42 CFR §482.1, §482.13(c), §482.15 by Defendant*

43. The facts and allegations set forth in all other sections of this Complaint and Jury Demand are incorporated herein by reference, as if set forth in specificity.

44. Section 1861(e) of the Conditions for Participation for Hospitals under 42 CFR §482.1(a)(1)(i) states that "Hospitals participating in Medicare must meet certain specified criteria."

45. Upon information and belief, Defendant, Methodist, failed to comply with this federal regulation.

46. Sections 1861(k) and 1902(a)(30) under 42 CFR §482.1(a)(3) provide, "that hospitals participating in Medicare and Medicaid must have a utilization review plan that meets specified requirements."

47. Upon information and belief, Defendant, Methodist, failed to comply with these federal regulations.

48. 42 CFR 482.13(c)(2) and (3) set out the standards for privacy and safety that hospitals are required to follow, stating "(2) The patient has the right to receive care in a safe setting," and "(3) The patient has the right to be free from all forms of abuse or harassment." The Department of Health & Human Services, Center for Clinical Standards and Quality have made it clear to hospitals, that in order to provide care in a safe setting, hospitals should identify patients at risk for intentional harm to self or others, identify environmental safety risks for such patients, and provide education and training for staff and volunteers. Although all risks cannot be eliminated, hospitals are expected to demonstrate how they identify patients at risk of self-harm or harm to others and steps they are taking to minimize those risks in accordance with nationally recognized standards and guidelines. Pursuant to federal regulations, all hospitals are expected to implement a patient risk assessment.

49. Upon information and belief, Defendant, Methodist, failed to comply with these federal regulations.

50. Pursuant to 42 CFR §482.15, "The hospital must comply with all applicable Federal,

State, and local emergency preparedness requirements. The hospital must develop and maintain a comprehensive emergency preparedness program that meets the requirements of this section, utilizing an all-hazards approach."

51. Upon information and belief, Defendant, Methodist, failed to comply with this federal regulation.

52. Pursuant to 42 CFR §482.15(a), a hospital's emergency preparedness plan must be based on, and include, a documented, facility-based and community-based risk assessment, utilizing an all-hazard approach. It must also include strategies for addressing emergency events identified by the risk assessment as well as address the patient population, including, but not limited to, persons at-risk.

53. Upon information and belief, Defendant, Methodist, failed to comply with this federal regulation.

54. In addition, hospitals should also provide the appropriate level of education and training to staff regarding the identification of patients at risk of harm to self or others, the identification of environmental patient safety risk factors, and mitigation strategies. Staff would include direct employees, volunteers, contractors, per diem staff and any other individuals providing clinical care under arrangement.

55. Upon information and belief, Defendant, Methodist, failed to comply with these federal regulations.

56. Pursuant to 42 CFR §482.15(b), "The hospital must develop and implement emergency preparedness policies and procedures, based on the emergency plan set forth in

paragraph (a) of this section, risk assessment at paragraph (a)(1) of this section, and the communication plan at paragraph (c) of this section."

57.     Upon information and belief, Defendant, Methodist, failed to comply with this federal regulation.

58.     Pursuant to 42 CFR §482.15(d)(1) contains requirements for hospitals to train staff and to have policies and procedures aimed at protecting both their workforce and their patients.

59.     Upon information and belief, Defendant, Methodist, has failed to provide the necessary plan, all-hazard approach, policies, or procedures, in order to protect their staff, including independent contractors like Plaintiff, Jessica Bates.

60.     As a direct and/or proximate result of Defendant, Methodist's, failure to follow federal law 42 CFR §482, Plaintiff, Jessica Bates, suffered harms, losses, impairment, and damages, including but not limited to pain, suffering, medical bills, mental damages, balance issues, lost wages, loss of wage earning capacity, concussion, traumatic brain damage, permanent impairment, disability, as well as others to be shown at trial, due to a patient, whom Defendant, Methodist, knew was a risk of harm not only to herself but the staff, including, Plaintiff, Jessica Bates.  These damages far exceed Seventy-Five Thousand Dollars ($75,000.00) in compensation for economic, non-economic, and impairment damages.

61.     Defendant caused, created, and encouraged this violent and at-risk environment in the following ways:

   a.    Defendant failed to create an emergency preparedness plan in order to protect their staff, as mandated under 42 CFR §482.1(a) and §482.15(a) and (d).

    b.    Defendant failed to create emergency preparedness policies and procedures to protect their staff, as mandated under 42 CFR §482.1(a) and §482.15(b) and (d).

    c.    Defendant failed to have any measures in place either to alert or to warn staff of risks with patients, as mandated under 42 CFR §482.1(a) and §482.15(a) and (d).

    d.    Defendant failed to have any measures in place for staff to alert others of patients at risk to themselves or the staff, as mandated under 42 CFR §482.1(a) and §482.15(a), (b), and (d).

    e.    Defendant failed to create a safe and secure environment, as mandated under 42 CFR §482.1(a) and §482.13(c)(2) and (3).

    f.    Defendant allowed Plaintiff, Jessica Bates, to be subjected to a high risk patient, who was known by Defendant, Methodist, to be at risk both to herself and the staff, despite clear mandates under 42 CFR §482.

62.    Defendant's actions were knowing and intentional and taken with a willful, wanton and intentional disregard of Plaintiff's safety and rights under Title 42 of the Code of Federal Regulations.

63.    The actions of Defendant were so grossly inadequate and contrary to law and the requirements of Title 42 of the Code of Federal Regulations that Plaintiff is entitled to an award of punitive damages for violation of her rights.

## VIII.  SECOND CAUSE OF ACTION
*Outrageous Conduct by Defendant, Methodist*

64.    The facts and allegations set forth in all other sections of this Complaint and Jury Demand are incorporated herein by reference, as if set forth in specificity.

65. The facts asserted in this Complaint are shocking to the conscious on an objective basis and will cause the fact finder to assert that what occurred in this matter was highly outrageous conduct, which is intolerable in a civilized society.

66. Defendant's actions and omissions, as set forth above, were extreme and demonstrated an utter disregard for the safety and the well-being of a female staff member, who was seeking to work in a safe environment.

67. The environment created by Defendant, as set forth in this Complaint, was completely unsafe for any staff, much less female staff, like the plaintiff. The environment that existed and actions of Defendant failed to safeguard the Plaintiff and provide her protection.

68. Defendant failed to properly evaluate, assess, and monitor a staff member with known head trauma and see that Plaintiff had medical and psychological assistance.

69. Defendant, through their management, showed a callous and willful disregard of the safety of the Plaintiff.

70. The level of outrageous conduct by Defendant was extremely high and conscience, shocking, and was not simply an act of negligence. The level of outrageous conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is regarded or should be regarded as atrocious and utterly intolerable in a civilized community.

71. Defendant at all times held the position of authority over Plaintiff, Jessica Bates, with a power to affect her safety, wellbeing, and her interests. This was not a simple case of Defendant's behavior being one of mere insult or annoyance but was conduct of a much higher improper nature that reaches the degree of outrageous conduct, conduct which is actionable in tort.

72. As a direct and proximate result of Defendant's outrageous conduct, Plaintiff was injured as set forth above in this Complaint.

## IX.  THIRD CAUSE OF ACTION
*Negligence and/or Medical Malpractice by Defendant, Methodist*

73. The facts and allegations set forth in all other sections of this Complaint and Jury Demand are incorporated herein by reference, as if set forth in specificity.

74. Defendant, Methodist, had a duty to protect and keep safe their staff, nurses, administrators, and agents from known risks of harm and/or risks of harm that should have been known, including risks from patients.

75. Defendant, Methodist, had a duty to create a plan to maintain their staff's safety and security.

76. Defendant, Methodist, had a duty to create policies and procedures to protect their staff from known damages.

77. Upon information and belief, Defendant, Methodist, breached these duties of care owed to their staff, including Plaintiff, Jessica Bates, and their breach of those duties both directly and/or proximately was a cause in fact and legal cause for the harms, losses, impairments, and damages, including but not limited to pain, suffering, medical bills, mental damages, balance issues, lost wages, loss of wage earning capacity, concussion, traumatic brain damage, permanent impairment, disability, as well as others to be shown at trial, due to a patient, whom Defendant, Methodist, knew or should have known was a risk of harm not only to herself but the staff, nurses, employees, administrators, and/or agents.  These damages far exceed Seventy-Five Thousand Dollars ($75,000.00) in compensation for economic, non-economic, and impairment damages.

78. To the extent applicable, upon information and belief, any employee of Defendant's who's job it was to implement these rules, laws, and/or regulations concerning the safety of their staff, employees, faculty, administrators, and/or agents, was negligent and the proximate cause of any harms, losses, and injuries to Plaintiff. Moreover, such employee acted within the course and scope of their employment. Lastly, none of the exceptions listed in T.C.A. §29-20-205 apply. See, T.C.A. §29-20-310(a).

79. Defendant's decision not to comply with statutes, laws, and/or regulations, as outlined above, was an "operational act" and not a "discretionary function" within the meaning of the Tennessee Governmental Tort Liability Act, as the decision was based upon pre-existing laws, regulations, policies, or standards.

## X.  FOURTH CAUSE OF ACTION
*Res Ipsa Loquitur by Defendant, Methodist*

80. The facts and allegations set forth in all other sections of this Complaint and Jury Demand are incorporated herein by reference, as if set forth in specificity.

81. On April 19, 2022, and at all times mentioned in this Complaint, the care of Defendant, Methodist's, staff, including but not limited to Plaintiff, Jessica Bates, was under their exclusive management and control.

82. Injuries, damages, impairment, and harm of the nature sustained by Plaintiff, as outlined hereinabove, do not ordinarily occur in the absence of negligence on the part of the Defendant, Methodist, and which injuries, damages, impairment, and harm are and were unusual and unexpected medical and/or nursing results, which ordinarily do not occur in the absence of negligence, medical malpractice, and/or deviations from the applicable standard of care.

83. As a direct and proximate/legal result of the actions and/or omissions of Defendant,

Methodist, Plaintiff suffered damages, impairment, and/or harm, including, but not limited to: pain, suffering, medical bills, mental damages, balance issues, lost wages, loss of wage earning capacity, concussion, traumatic brain damage, permanent impairment, disability, as well as others to be shown at trial, due to a patient, whom Defendant, Methodist, knew was a risk of harm not only to herself but the staff. These damages far exceed Seventy-Five Thousand Dollars ($75,000.00) in compensation for economic, non-economic, and impairment damages.

## XI.  PRAYER FOR RELIEF

Plaintiff demands that this Court enter judgment against the Defendant, Methodist, and as a direct and proximate/legal result of the negligent acts and/or omissions of the Defendant, Methodist, this Court award damages, as established by the trier of fact, including:

1. Award Plaintiff a reasonable amount in compensatory damages under federal and state law;

2. Award past, present, and future wage loss and benefit loss;

3. Award medical expenses, including expenses for counseling and psychological treatment;

4. Award damages for permanent impairment and disfigurement;

5. Award damages for traumatic brain injury;

6. Award such other damages that are appropriate;

7. Award punitive damages;

8. Award costs;

9. Award pre-judgment interest from the earliest possible date as provided by law and,

if appropriate, award post-judgment interest.

Plaintiff respectfully demands a trial by jury and reserves the right to amend her Complaint to conform to the evidence as it develops.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

DATED this the 14th day of August, 2023.

>ROBERTS WILSON, P.A.
>
>*s/ Roberts Wilson, III, Esq.*
>Roberts Wilson, III, Esq., No. 101194
>ROBERTS WILSON, P.A.
>P.O. Box 2428
>Oxford, Mississippi 38655
>Phone: (662) 533-9121
>Fax: (662) 533-9112
>Email: roberts@wegetjustice.com

Plaintiff's Address:
Jessica Bates
23 County Road 412
Oxford, Mississippi 38655