IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JESSICA BATES,            ) | |
| )  | |
| Plaintiff,       ) | |
| ) | Case No. 2:23-cv-02508-JPM-atc |
| v.                ) | |
| ) | |
| METHODIST LE BONHEUR    ) | |
| HEALTHCARE d/b/a METHODIST ) | |
| NORTH HOSPITAL,          ) | |
| ) | |
| Defendant.      ) | |

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Before the Court is Defendant Methodist Le Bonheur Healthcare d/b/a Methodist North Hospital's ("Methodist's" or "Defendant's") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff Jessica Bates' ("Bates'" or "Plaintiff's") Response, Defendant's Reply, and Plaintiff's Surreply. (ECF Nos. 9-10, 12-14.) For the reasons discussed below, Defendant's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART.**

I. **BACKGROUND**

a. *Procedural Background*

Plaintiff filed a Complaint against Defendant on August 15, 2023. (ECF No. 1.) Plaintiff filed an Amended Complaint on September 18, 2023 with eight associated exhibits. (ECF No. 6.) Defendant filed the Motion to Dismiss on October 17, 2023 along with four associated exhibits. (ECF Nos. 9-10.) Plaintiff filed her Response in Opposition on November

14, 2023. (ECF No. 13.) Defendant filed a Reply on November 28, 2023, and Plaintiff filed a Surreply on December 4, 2023.[1]

Plaintiff's First Amended Complaint ("FAC") lists four causes of action. The first is "[v]iolation of 42 C.F.R. § 482.1, § 482.13 [and] § 482.15 by Defendant," and states that because Methodist failed to follow these federal Medicaid/Medicare regulations, Plaintiff "suffered harms, losses, impairment, and damages. . ." (ECF No. 6 ¶ 43-63.) Plaintiff's first cause of action also alleges that the violations of federal Medicare/Medicaid regulations were "knowing and intentional and taken with a willful, wanton and intentional disregard of Plaintiff's safety and rights under Title 42 of the Code of Federal Regulations [and were] so grossly inadequate and contrary to law . . . that Plaintiff is entitled to an award of punitive damages." (Id. ¶¶ 62-63.) Plaintiff's second cause of action alleges "outrageous conduct by Defendant." (Id. ¶¶ 64-72.) Plaintiff's third cause of action alleges "negligence and/or medical malpractice by Defendant, Methodist[,]" and states that Methodist had duties to protect their staff, create plans to maintain staff security, and create policies and procedures to protect staff from "known damages." (Id. ¶¶ 73-76.) Plaintiff alleges that Defendant breached this duty, and therefore proximately caused Plaintiff's damages and injuries. (Id. ¶ 77.) Plaintiff's fourth cause of action is "*res ipsa loquitor* by Defendant[.]" (Id. ¶¶ 80-83.)

    b. *Facts Alleged in the First Amended Complaint ("FAC")*[2]

According to the First Amended Complaint ("FAC"), Jessica Bates was working as an emergency department registered nurse at Methodist on April 19, 2022. (ECF No. 6 ¶¶ 8-10.)

---

[1] While leave of court is not required under the local rules to file a Reply to a Motion to Dismiss, leave of the Court should have been sought before Plaintiff filed her Surreply. See L.R. 7.2(c); 12.1.

[2] The First Amended Complaint details facts purportedly supporting Plaintiff's claims. For the purposes of this Motion to Dismiss, the Court takes these facts as true. This section should not be construed as a finding on any listed fact.

2

Bates is a resident of Oxford, Mississippi, and was placed at Methodist by Voyage Healthcare, LLC to work as an independent contractor. (Id. ¶¶ 6-7, 10.) Methodist is located and incorporated in Tennessee. (Id. ¶ 7.)

The FAC alleges that on April 19, 2022, Methodist "received a patient to Emergency Department Room 20 via EMS." (Id. ¶ 13.) The patient had "been at a doctor's office for total knee replacement evaluation [and the doctor reported to EMS] that when the doctor told the patient she was not a good candidate for the surgery, the patient stated that she was going to go blow her brains out and she had the gun to do it." (Id. ¶ 18.) After the patient's caregiver confirmed that she "did have a weapon in the home to do it[,]" the patient was transported to Methodist, where Methodist staff "witnessed and knew that the patient was verbally combative[.]" (Id. ¶¶ 17-18.) Bates was not with Methodist staff when the patient was received and placed in Room 20. (Id. ¶ 14.)

According to the FAC, "before 13:35 on April 19, 2022, the patient's personal caregiver left [Room 20] and asked Plaintiff [] if she could come get the call light for the patient." (Id. ¶ 19.) When Plaintiff entered Emergency Room 20 "to get the call light for the patient" and "reached to hand the patient the call light, the patient without warning struck Plaintiff in the side of the head with the [c]ord of the monitor, which knocked Plaintiff out and she fell to the ground." (Id. ¶¶ 20, 22-23.) When Plaintiff regained consciousness, "the patient had her hands around Plaintiff's throat, while beating her on the head." (Id. ¶ 24.) At 13:32, another nurse allegedly heard screaming from the hallway, entered the room and observed the patient "slapping and punching the side of [Plaintiff's] head . . . [and] screaming that she was going to 'blow everyone here's head off.'" (Id. ¶ 25.) The patient was placed in restraints "per a physician's verbal order," and continued to make threats. (Id. ¶¶ 26-27.)

The FAC alleges that Defendant did not "warn, notify, or alert Plaintiff . . . about the violent and high-risk nature or the recent history of threats from the patient in Room 20." (Id. ¶ 21.) The FAC further alleges that despite increases in attacks on hospital staff, Defendant had "no code or plan in place letting staff know if there's an at-risk patient or if the patient could potentially harm the staff[,]" "had no policy or procedure in place[] regarding at-risk patients or the staff potentially being in harms' way and how to handle it[,]" and "had no emergency call button if there was a patient[] who was putting the staff at risk." (Id. ¶¶ 29-31; see also Id. ¶¶ 11-12.)

The FAC also alleges that after the incident, "Defendant . . . did[ not] follow head trauma protocol of any kind after finding Plaintiff . . being struck multiple times in the head[,]" and "failed to monitor Plaintiff . . . for twenty-four (24) hours following her head trauma." (Id. ¶¶ 31-32.) Plaintiff alleges that she suffered "pain, suffering, medical bills, mental damages, balance issues, lost wages, concussion, traumatic brain damage, permanent impairment [and] disability[.]" (See, e.g., Id. ¶ 60.)

The FAC states that "[t]he statutory Notice of Claim was filed at least sixty (60) days prior to the filing of this Complaint." (ECF No. 6 ¶ 3.) The FAC also states that the statutorily required Certificate of Good Faith was filed. (Id. ¶ 4.)

## II. LEGAL STANDARD

### a. *Motion to Dismiss*

Courts deciding motions to dismiss under Federal Rule of Procedure 12(b)(6) must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all inferences in favor of the plaintiff." Directv, Inc. v. Treesh, 487 F.3d 471, 476

4

(6th Cir. 2007). Plaintiffs must provide "'a short and fair statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the ground on which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). To survive a motion to dismiss, the allegations "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To do so, plaintiffs must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"The moving party [in a 12(b)(6) motion to dismiss] has the burden of proving that no claim exists." Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross and Blue Shield, 552 F.3d 430, 433 (6th Cir. 2008); see also Willman v. Att'y Gen. of United States, 972 F.3d 819, 822 (6th Cir. 2020) (quoting Coley v. Lucas Cnty., 799 F.3d 530, 537 (6th Cir. 2015)). "The movants burden . . . is the one that bears the burden of explaining—with whatever degree of thoroughness [] required under the circumstances—why dismissal is appropriate for failure to state a claim." Adams v. The Vanderbilt University, 2024 WL 1182861 (M.D. Tenn. March 19, 2024).

b. *THCPA Claims in Federal Diversity Cases*

When federal jurisdiction is based on diversity, the substantive law of the forum state applies. Savedoff v. Access Grp., Inc., 524 F.3d 754, 762 (6th Cir. 2008) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). District courts "look to the final decisions of that state's highest court and, if no decision is directly on point, then [] must make an Erie guess to determine how that court, if presented with the issues, would resolve it." Conlin v. Mortg. Elec. Registration Sys., Inc., 714 F.3d 355, 358-59 (6th Cir. 2013). "Intermediate state appellate

5

courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently." Savedoff, 524 F.3d. at 762.

Tennessee health care liability actions are governed by the Tennessee Health Care Liability Act ("THCLA"). Truth v. Eskioglu, 781 F.Supp.2d 630, 631 (M.D. Tenn. 2011) (citing Miller v. Monroe Cnty., No. 3:09-cv-85, 2010 WL 1427298 at *4 (E.D. Tenn. 2010) (holding that the THCLA applies in federal diversity actions and collecting cases))). The statute was amended in 2012 to broaden its scope from "medical malpractice" to "health care liability." Tennessee Civil Justice Act of 2011, ch. 510 § 9, 2011 Tenn. Pub. Acts 1505; Cahoon v. Premise Health Holding Corp., 2021 WL 2474460 at *2 n. 5 (M.D. Tenn. June 16, 2021) (citing Wade v. Jackson-Madison Cty. Gen. Hosp. DIst., 469 S.W.3d 54, 59 n. 3 (Tenn. Ct. App. 2015)). Under the THCLA, health care liability actions are "any civil action . . . alleging that a health care provider or providers have caused an injury *related to* the provision of, or failure to provide, health care services to a person, *regardless of the theory of liability on which the action is based*[.]" Tenn. Code. Ann. § 29-26-101(a)(1) (emphasis added). Health care services include, *inter alia*, care by physicians, nurses, licensed practical nurses, pharmacists, pharmacy interns or pharmacy technicians under the supervision of a pharmacist, orderlies, certified nursing assistants, advance practice nurses, physicians assistants, nursing technicians and other agents, employees and representatives of the provider, and also includes staffing, custodial or basic care, positioning, hydration and similar patient services. Tenn. Code. Ann. § 29-26-101(b). Plaintiffs bringing claims under the THCLA in Tennessee state courts are required to file presuit notice sixty days before filing their Complaint and are required to file with their complaint certification that at least one expert determined their claims had a good faith basis. Tenn. Code. Ann. §§ 29-26-121, 29-26-122(a).

While actions for "injuries to the person" "shall be commenced within one (1) year after the cause of action has accrued[,] the THCLA provides that "when [presuit notice] is given to a provider as provided in this section, the applicable statutes of limitation and repose shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations and statute of repose applicable to that provider. . ." Tenn. Code. Ann. §§ 28-3-104(a)(1)(A), 29-26-121(c). "In the event that a complaint is filed in good faith reliance on the extension of the statute of limitations [] granted by this section and it is later determined that the claim is not a health care liability claim, the extension of the statute of limitations and repose granted by this section is still applicable to the plaintiff." Tenn. Code. Ann. § 29-26-121(e).

While district courts in the Sixth Circuit have found that plaintiffs are "not required to comply with the notice requirements set forth in the THCLA in order to proceed with . . . federal lawsuit[s]" in the wake of the Sixth Circuit's decision in Albright v. Christensen, these notice requirements refer to the mandatory filing of presuit notice and certificate of good faith. Adams v. the Vanderbilt University, 2024 WL 1182861 at *4 (M.D. Tenn. March 19, 2024) (citing Albright v. Christensen, 24 F.4th 1039, 1045-49 (6th Cir. 2022)); see also Smith v. Corecivic, Inc., 618 F.Supp.3d 695, 699-702 (M.D. Tenn. 2022). This line of cases does not implicate the statute of limitations component of the THCLA, or the use of presuit notice to extend statutes of limitation. The Sixth Circuit, in rejecting a Michigan notice and certificate requirement analagous to the THCLA, contrasted state law procedures on statutes of limitation and noted that they presented "a different question[.]" Albright, 24 F.4th at 1047. The Sixth Circuit therefore distinguished statute of limitation questions from the presuit notice and certificate of good faith requirements which "directly conflict with[,]" and are therefore preempted by, the federal rules. Id. This distinction is consistent with the Sixth Circuit's treatment of statutes of

limitations as substantive for <u>Erie</u> purposes. <u>Williams v. United States</u>, 754 F.Supp.2d 942, 950 (W.D. Tenn. 2010) (Mays, J.) (citing <u>Phelps v. McClellan</u>, 3) F.3d 658, 662 (6th Cir. 1994) (citing <u>Guar. Trust Co. v. York</u>, 326 U.S. 99, 110-11 (1945))) ("[A] statute of limitations . . . is substantive for <u>Erie</u> purposes[.]").

### III. ANALYSIS

#### a. *Negligence and Medical Malpractice*

Defendant argues that Plaintiff "fails to state a claim for a 'health care liability action' under the Tennessee Health Care Liability Act. . ." (ECF No. 9 at PageID 174.) Defendant argues that the THCLA does not apply to claims for negligence brought by healthcare staff injured in providing medical care, the Act is inapplicable, and the one-year statute of limitations for tort claims should therefore time-bar Plaintiff's negligence claim. (ECF No. 9 at PageID 175; ECF No. 9-1 at PageID 179-186.) Defendant argues that THCLA's statutory definitions inclusion of "similar patient services" in its definition of health care services "makes the patient an indispensable party to any claim involving the provision of health care services," and draws from canons of statutory interpretation to support its preferred construction. (ECF No. 9-1 at PageID 180-81.) Defendant also argues that Plaintiff's preferred construction of the THCLA would "lead to an absurd result" of making "the exclusive remedy for those injured in a medical setting, even when the claimant is not receiving medical services of any kind . . . the complicated, procedurally fraught mechanism of making a claim under the Health Care Liability Act." (<u>Id</u>. at PageID 186.)

Plaintiff argues that the Tennessee Court of Appeals has held that claims against a health care provider which allege negligence in the decision to restrain a potentially dangerous patient presenting with suicidal ideation falls within the THCLA, even when the claim is brought by

8

an injured staff member and not the patient. (ECF No. 12-1 at PageID 236-28 (citing Forsythe v. Jackson Madison Cnty. Gen. Hospital Dist., No. W2021-01228-COA-R3-CV at 12 (Tenn. App. Nov. 28, 2022) (hereinafter, "Forsythe").)  Plaintiff also argues that Defendant's reliance on Cordell v. Cleveland Tennessee Hospital, LLC "is misplaced" because that case involved an intentional tort and included dicta that indicated a negligence claim asserted based on the same facts would have fallen under the ambit of the THCLA.  (ECF No. 12-1 at PageID 238 (citing 544 S.W.3d 331, 339 (Tenn. Ct. App. 2017).)

In response, Defendant concedes that "[T]he issue of whether the THCLA intended to place health care providers (or members of the public visiting the premises) on the same footing as patients when bringing a health care liability action based on institutional negligence . . . has not been addressed." (ECF No. 13 at PageID 258-59.)  Defendant also acknowledges that "the distinction between a claim that is "related to health services" and one that is not is, in many cases, unsettled[,]" given the "undeniably broad" scope of the THCLA.  (ECF No. 13 at PageID 258 (citing Lacy v. Vanderbilt Univ. Med. Ctr., No. M2016-0214-COA-R3-CV, 2017 WL 6273316, at *7 (Tenn. Ct. App. May 4, 2017); Lacy v. Mitchell, 541 S.W.3d 55, 61 (Tenn. Ct. App. 2016)).)  Defendant also argues that the Tennessee Supreme Court's decision in Forsythe is not controlling, and should be distinguished from the facts of this case.  (ECF No. 13 at PageID 260-64 (discussing Forsythe v. Jackson Madison Cnty. Gen. Hosp. Dist., No. W202101228COAR3CV, 2022 WL 17247615 (Tenn. Ct. App. Nov. 28, 2022)).)  Defendant does not argue that the Tennessee Supreme Court would have decided Forsythe differently. (See generally, ECF No. 13.)

The text of the statute defines health care liability actions broadly.  Tenn. Code. Ann. § 39-36-101(a)(1).  The text does not expressly limit the THCLA's scope to claims by patients

9

against their providers. Id. The Tennessee Court of Appeals has found that it does not. Forsythe v. Jackson Madison Cnty. Gen. Hosp., No. W2021-01228-COA-R3-CV at 12 (Tenn.App. Nov. 28, 2022). In Forsythe, the Tennessee Court of Appeals found that when a patient with a history of suicide attempts attacked a psychiatric nurse, the THCLA governed the nurse's claims against the hospital. Id. at 12. The Tennessee Supreme Court has not addressed the issue of claims by healthcare providers, but its definition of the barrier between THCLA and ordinary negligence claims is consistent with Forsythe, stating that "When a plaintiff's claim is for injuries resulting from negligent medical treatment, the claim sounds in medical malpractice [but] [w]hen a plaintiff's claim [is] for injuries resulting from negligent acts that did not affect the medical treatment of a patient, the claim sounds in ordinary negligence." Gunter v. Lab. Corp. of Am., 121 S.W.3d 636 (Tenn. 2003). Gunter was decided before the Tennessee legislature broadened the language of the THCLA to refer not just to "medical malpractice" but "health care liability" generally. Id. The Tennessee Supreme Court's language indicates that "negligen[t] acts that . . . affect the medical treatment of a patient" fall within the THCLA and its predecessor statute, and does not specify that the plaintiff must be the patient affected. Id. Both the holdings of the Tennessee Supreme Court and the Tennessee Court of Appeals indicate that the critical question on THCLA coverage is not the party bringing the claim, but whether the claim implicates medical decision-making. See Welch v. Oaktree Health & Rehab. Ctr. LLC, 2023 WL 5619526, at *9 (Tenn. Aug. 31, 2023).

The THCLA covers claims which are "1) a civil action; 2) against a health care provider; [where] 3) the harm alleged arises from 'the provision of, or failure to provide, health care services.'" Stedham v. Cumberland Cnty., 2019 WL 2501560 at *4 (M.D. Tenn. June 17, 2019); see also Igou v. Vanderbilt Univ., 2015 WL 1517795, at *4 (Tenn. Ct. App. Mar. 27,

10

2015) (citing Tenn. Code. Ann. § 29-26-101(a)(1)).  The Tennessee Court of Appeals in Forsythe stated that "for a claim to relate to the provision of health care services: (1) the claim must 'sufficiently relate to the provision of actual health care'; (2) 'the services provided must be sufficiently related to what makes the person undertaking to give the services a health care provider;' and (3) 'the actions at issue must call for the exercise of health care judgment or decision making.'"  Forsythe at 8.  Here, Plaintiff alleges that the decision to classify a patient as a danger to others and place them in restraints is one made by a physician.  (ECF No. 6 ¶ 26.)  As in Forsythe, the "question of whether and how to restrain and/or supervise a potentially dangerous mental patient involves knowledge and understanding of his diagnosis and medical history."  Forsythe at 10 (citing Turner v. Jordan, 957 S.W.2d 815, 927 (Tenn. 1997); Newman v. State, 586 S.W.3d 921 (Tenn. Ct. App. 2019), perm. app. denied (Tenn. June 20, 2019); Newman v. Guardian Healthcare Providers, Inc., 2016 WL 4069062, at *7 (Tenn. Ct. App. July 27, 2016).  The allegations in the FAC make it clear that the claim relates to the provision of health care related to Methodist's role as a health care provider: here, the provision of psychiatric services to and use of restraints on a patient transported to the hospital after suicidal statements.  (ECF No. 6 ¶¶ 17-19.)  While the Complaint does not include allegations related to specific hospital policies requiring monitoring, as in Forsythe, Forsythe was decided at the summary judgment stage, and the Tennessee Court of Appeals held that the key question was not how the policy applied, but "whether [Defendant] failed to properly assess [the patient's] need for monitoring and failed to execute the monitoring in a way to prevent Plaintiff's injuries."  Forsythe, at 12.  The same question is key to Plaintiff's negligence claim here.

The sources cited in Defendant's statutory interpretation arguments support the application of the THCLA to Plaintiff's negligence claim. Defendant argues that the THCLA was:

> borne out of a 'threat' perceived by the [Tennessee] legislature . . . "not only to the medical profession and its insurers, but to the general welfare of the citizens of the state, because, believing that as liability costs increase, so does the cost of health care and the practice of 'defensive medicine,' spawned by the fear of costly legal actions, [which] may lead to a lower quality of health care in general."

(ECF No. 9-1 at PageID 184 (citing Jackson v. HCA Health Servs. Of Tennessee, Inc., 283 S.W.3d 497, 503 (Tenn. Ct. App. 2012).) The legislative action to solve this problem, however, was a compromise position: in exchange for higher procedural barriers to health care liability claims, complying Plaintiffs who provided presuit notice received an 120-day extension to the ordinarily applicable statute of limitation. This solution required Plaintiffs to "screen" claims which alleged negligent medical decision-making through consultation with an expert and the filing of a certificate of good faith. This exchange, embodied in the text of the THCLA, accords with the application of THCLA to claims where "the conduct at issue involve[s] the exercise of medical judgment or skill" regardless of whether the Plaintiff was a patient or a staff member. See Welch, 2023 WL 5619526, at *9 (Tenn. Aug. 31, 2023) (citing Coffee Cnty. Bd. of Educ. v. City of Tullahoma, 574 S.W.3d 832, 839 (Tenn. 2019) (quoting Mills v. Fulmarque, Inc., 360 S.W.3d 362, 368 (Tenn. 2012)) ("The text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose.") In environments where, as Defendants argue, "76% of medical providers have experienced workplace violence[,]" applying the higher barriers imposed by the THCLA prevents medical providers from allowing liability concerns to cloud their medical judgment and ability to provide compassionate patient care. (ECF No. 9-1 at PageID 185.) While Defendant argues application of the THCLA to this case would lead to

application of the THCLA to any ordinary negligence action arising out of actions on hospital property, this argument is unavailing given that the Tennessee Court of Appeal and Supreme Court clearly delineate between these kinds of cases and those which implicate medical decision-making.  See, e.g. Lacy v. Mitchell, 541 S.W.3d 55 (Tenn. Ct. App. 2016) (rape of patient by hospital security guard not covered by THCLA); Cordell, 544 S.W.3d 331 (provider hitting patient on the back with medical folder was not clearly covered by THCLA); Cooper v. Mandy, 639 S.W. 29 (Tenn. 2022) (doctor's discussion of informed consent covered by THCLA).

Given the express intent of the Tennessee legislature, the exchange embodied in the text of the THCLA, persuasive authority from the Tennessee Court of Appeals, and the absence of Tennessee Supreme Court cases rejecting application of the THCLA to claims by non-patients, it is likely that if presented with this issue, the Tennessee Supreme Court would determine that the THCLA applies to Plaintiff's negligence claim.  Even if it did not, given the unsettled nature of this question within Tennessee state courts and in Federal courts' interpretation of the THCLA, it is clear that Plaintiff's claim was filed "in good faith reliance on the extension of the statute of limitations [] granted by" the THCLA and "the extension of the statute of limitations and repose granted by this section is still applicable to the plaintiff."  Tenn. Code. Ann. § 29-26-121(e).  Accordingly, Plaintiff's third cause of action is not time-barred, and Defendant's Motion is **DENIED**.

      b.  *Adequacy of the Certificate of Good Faith*

Defendant argues that Plaintiff failed to properly file the Certificate of Good Faith required by Tenn. Code. Ann. § 29-26-122 because the Certificate of Good Faith did not bear the signature of an attorney barred in the State of Tennessee.  Defendant argues that because

the signature on the Certificate of Good Faith is illegible, the Presuit Notice was filed by an attorney from a different firm, and neither is signed by an attorney barred in the State of Tennessee, it does not meet the statutory requirements of the THCLA.[3] (ECF No. 9-1 at PageID 193-94.)

Plaintiff argues that she "properly filed with her Complaint a Certificate of Good Faith that was signed by [Robert Wilson, III, Esq.], who is licensed to practice law in the United States District Court for the Western District, Western Division in the State of Tennessee. (ECF No. 12-1.)

Defendant cites a single case in support of its argument, in which the Tennessee Court of Appeals vacated a trial court's determination that Plaintiff "did give timely pre-suit notice[]" where it was submitted by an attorney not licensed in Tennessee. (ECF No. 13 at PageID 264 (citing Vilas v. Love, 2023 WL 7040062 at *10 (Tenn. Ct. App. Oct. 26, 2023.)  The Tennessee Court of Appeals, however, did not determine whether the argument was meritorious, but instead vacated because the trial court was "required to do more than address arguments by implication" in ruling. Id.  As such, the case is insufficient to meet Defendant's burden of persuasion as the movant for dismissal pursuant to Rule 12(b)(6).  Defendant's argument that the notice is void because it was filed by an attorney engaged in the alleged unlicensed practice of law is likewise unavailing, as the text of the statute does not require presuit notice to be given by an attorney. Compare Tenn. Code. Ann. § 29-26-121(a)(1) ("Any *person, or that person's authorized agent* . . . shall give written notice") with Tenn. Code. Ann. § 29-26-122 ("In any health care liability action in which expert testimony is required . . . *the plaintiff or plaintiff's*

---

[3] Defendant also argues that the attorney who signed the presuit notice was engaged in unauthorized practice of law in the State of Tennessee by sending the notice.

*counsel* shall file a certificate of good faith with the Complaint."). See also Tenn. R. Sup. Ct. 5.5(c) (lawyers admitted in other United States jurisdictions may provide legal services on a temporary basis in Tennessee related to a pending or potential proceeding if, *inter alia*, they reasonably expect to be authorized to practice law in Tennessee in an upcoming matter); Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC, 433 S.W.3d 512, 520 (Tenn.2014) (THCLA is subject to substantial, not strict, compliance standard). Accordingly, the alleged deficiencies in Plaintiff's notice of pretrial suit do not mandate dismissal, and Defendant's Motion is **DENIED**.

c. *Other Claims*

Defendant argues that 42 C.F.R. 482.1(a), 482.13(c), and 482.15(a-d) do not provide a basis for a private cause of action, as they determine Medicare eligibility of hospitals, and that Plaintiff "failed to plead a viable claim for intentional infliction of emotional distress or sufficient basis for the invocation of the evidentiary doctrine of *res ipsa loquitor*." (ECF No. 9 at PageID 175.)

Plaintiff agrees to voluntarily dismiss her Second and Fourth claims (Outrageous Conduct and *Res Ipsa Loquitor*). (ECF No. 12-1 at PageID 243.) Plaintiff also agrees to withdraw her claim for punitive damages. (Id.) Therefore, Defendant's Motion is **GRANTED** as to these claims.

Plaintiff's reply briefs do not mention her claim for relief under C.F.R. §§ 482.1, 482.13 and 482.15. The Court therefore deems Defendant's Motion to Dismiss these claims unopposed. See Humphrey v. United States Att'y Gen.'s Office, 279 F. App'x 328 (6th Cir. 2008); Freeman v. Spoljaric 667 F.Supp.3d 636, 660 (S.D. Ohio 2023) (citing Doe v. Bredesen,

15

507 F.3d 998, 1007-08 (6th Cir. 2007) ("[C]ourts can and often do find parties concede arguments to which they do not respond . . . includ[ing] a party's failure to respond to arguments raised in a motion to dismiss.")  While this Court is "not required to do so" at the Motion to Dismiss stage, Defendants have also met their burden of persuasion in arguing that the sections of Title 42 specified do not create a private cause of action.  See 42 C.F.R. 482.1(b); Sepulveda v. Stiff, No. CIV.A. 4:05CV167, 2006 WL 3314530, at *7 (E.D. Va. Nov. 14, 2006) ("[I]t is clear to this Court that [42 C.F.R. § 482.1(b) *et seq*] does not create a private right of action, whether express or implied.")  Defendant's Motion is therefore **GRANTED** as to Plaintiff's First Cause of Action.

### IV.  CONCLUSION

Because Plaintiff's claim for negligence is not time-barred, Defendant's Motion to Dismiss is **DENIED** as to Plaintiff's Third Cause of Action.  Plaintiff's First, Second, and Fourth Causes of Action, and claim for punitive damages, are **DISMISSED WITHOUT PREJUDICE**.  Defendant's Motion for Leave to File Supplemental Memorandum in Support of Motion to Dismiss is **MOOT**.

**SO ORDERED**, this 7th day of August, 2024.

> */s/ Jon P. McCalla*
> JON P. McCALLA
> UNITED STATES DISTRICT JUDGE